UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
LINDA ZHANG,

                      Plaintiff,

       -against-

CENTENE   MANAGEMENT   COMPANY,
LLC,

                   Defendant.
---------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
21 CV 5313 (DG) (CLP)

**POLLAK**, United States Magistrate Judge:

On September 24, 2021, plaintiff Linda Zhang commenced this action against defendant

Centene Management Company,[1] alleging claims of race discrimination in employment,

pursuant to 42 U.S.C. § 2000, *et seq*., 42 U.S.C. § 1981, and wrongful discharge and retaliation

in violation of New York Whistleblower Labor Laws, N.Y. Lab. Law § 740(2), and N.Y. Lab.

Law § 215(1).  On July 1, 2022, defendant moved to dismiss plaintiff's Fourth Amended

Complaint for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure.  (See ECF Nos. 26, 29).

On October 28, 2022, the motion to dismiss was referred by the Honorable Diane

Gujarati to the undersigned to prepare a Report and Recommendation.  (See Order, dated Oct.

28, 2022).  For the reasons set forth below, it is respectfully recommended that defendant's

motion be granted.

---

[1] The Court notes that the action had originally been commenced against "Centene Corporation."
Plaintiff's first Amended Complaint also named "Centene Corporation" as the defendant.  (See ECF No.
2).  On December 16, 2021, the parties stipulated that the proper defendant for this action is Centene
Management Company, LLC and that plaintiff may amend her complaint substituting Centene
Corporation for Centene Management Company, LLC.  (See ECF No. 7).  Plaintiff thereafter filed a
Second Amended Complaint substituting the proper defendant.  (See ECF No. 8).

## FACTUAL BACKGROUND

In considering this motion to dismiss, the Court accepts as true the allegations in the Fourth Amended Complaint and construes them in the light most favorable to the plaintiff. Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008).

According to the Complaint, plaintiff Zhang is an individual residing in Queens County, New York. (Compl.[2] ¶ 9). Plaintiff alleges that in 2012, she was hired as a registered nurse case manager by defendant Centene Management Company LLC ("Centene"), a domestic organization existing under the laws of New York, with its principal place of business located at 770 Forsyth Blvd., Saint Louis, MO 63105. (Id. ¶¶ 10, 11).

Plaintiff, a Chinese American, claims that from 2012 until 2020, she was a model employee and worked well with her team managers. (Id. ¶¶ 11, 12). In 2020, she was transferred to a new group under the management of Cheryl Armantrading ("Armantrading"), who plaintiff alleges treated her differently from all of her other Caucasian co-workers. (Id. ¶ 13). Specifically, plaintiff alleges that Armantrading's "voice, tone, words, and attitude when directed at Plaintiff were different than when dealing with any of Plaintiff's Caucasian co-workers." (Id. ¶ 14). Plaintiff further claims that Armantrading "harassed and humiliated" plaintiff in front of her co-workers, such that her co-workers suggested that plaintiff should report this treatment to the Human Resources ("HR") department, but plaintiff feared retaliation and did not report the conduct at that time. (Id. ¶ 15).

Plaintiff concedes that while Armantrading may not have used racial slurs directed at plaintiff, she was disrespectful and unpleasant toward plaintiff and created an uncomfortable environment for plaintiff, which the Caucasian co-workers did not experience. (Id. ¶ 16).

---

[2] Citations to "Compl." refer to plaintiff's Fourth Amended Verified Complaint, filed April 21, 2022, ECF No. 23.

According to plaintiff, when she returned from her approved leave time and sick day, Armantrading acted as if taking the time off was against company policy, and thereafter the harassment increased.  (Id. ¶ 17).  Plaintiff claims that in 2020, her workload increased but Armantrading failed to provide her with any support, resulting in plaintiff having to work overtime during the evenings and weekends.  (Id. ¶ 18).  Plaintiff further claims that rather than crediting plaintiff with her hard work and experience, Armantrading claimed that her coaching is what resulted in plaintiff's performance increase and the decrease in her patient queue.  (Id. ¶ 19).

As a further example of the difference in treatment, plaintiff alleges that she was required to attend a one-on-one meeting with Armantrading on a day that the company had announced was a "no meeting" day.  (Id. ¶ 20).  None of plaintiff's co-workers were required to attend.  (Id.)

Plaintiff alleges that in approximately 2018, defendant Centene purchased Fidelis Health Plan ("Fidelis") and thereafter, in or about 2020, defendant purchased WellCare Health Plan ("WellCare").  (Id. ¶ 21).  As part of the acquisition of WellCare, Centene agreed to abide by the governing Managed Long Term Care Policy 16.06:[3]  Guidance on Notices Proposing to Reduce or Discontinue Personal Care Services or Consumer Directed Personal Assistance Services (the "Policy").  (Id. ¶ 22, Ex. B).  According to the Complaint, this Policy provided that an enrollee's services could not be reduced or discontinued unless there was a legitimate reason for doing so.  (Id. ¶ 23 (citing 18 NYCRR §§ 505.14(b)(5)(v)(c)(2)(i) through (vi), and 18 NYCRR §§

---

[3] As explained further below, Managed Long Term Care Policy 16.06 was promulgated by the New York State Department of Health's Office of Health Insurance Programs.  (Compl., Ex. B). According to the Policy, on December 30, 2015, the Department had notified managed long term care plans of then-recent changes to Department of Health regulations governing personal care services ("PCS") and consumer directed personal assistance ("CDPAS"), including revised regulations regarding notices.  (Id.)  The Department of Health issued the Policy on November 17, 2016, and the purpose of the directive is to provide "further guidance to MLTC plans concerning appropriate reasons and notice language to be used when proposing to reduce or discontinue PCS to CDPAS."  (Id.)

505.28(h)(5)(ii)(a) through (f)).

Plaintiff alleges that beginning in 2020, a director of Centene/Fidelis sent various emails instructing team members to conduct case reviews for WellCare enrollees in an effort to reduce service hours so Centene "can make more profit."  (Id. ¶ 24).  Plaintiff alleges that Centene's employees were directed to "roll out these reductions in a mass-reduction or 'across-the-board' basis."  (Id. ¶ 25).  According to plaintiff, during the eight years she had worked at Centene, all reviews for WellCare enrollees had been done in person but to accomplish the mass reductions, Centene required its employees to conduct telephone reviews.  (Id. ¶¶ 25-26).

When plaintiff emailed her team manager Armantrading to express her concerns for the adequacy of telephone calls and what a reduction in service hours meant for some of her enrollees, Armantrading told her:  "'This is the Fidelis way, I want everybody to have a job.'" (Id. ¶ 27).  Plaintiff decided to report the company's practice to the New York State Department of Health ("DOH"), and encouraged other team members and patients to report to the DOH as well.  (Id. ¶ 30).  The DOH subsequently initiated an investigation and as a result, the WellCare enrollees whose hours had been reduced had their hours restored.  (Id. ¶¶ 31-32).

Thereafter, plaintiff was terminated on March 4, 2021.  (Id. ¶ 33).  Plaintiff was told that her termination was "not based on her performance," and she alleges that it was a result of her race and her action in reporting the company's wrongful actions.  (Id. ¶¶ 33-34).

Plaintiff's Fourth Amended Complaint contains three claims for relief:  1) discrimination on the basis of race, in violation of 42 U.S.C. § 2000e, et seq. and 42 U.S.C. § 1981 (First and Second Claims for Relief); and 2) wrongful discharge and retaliation, in violation of N.Y. Lab. L. §§ 740(2) and 215(1) (Third Claim for Relief).  (Id. ¶¶ 36-55).

4

## PROCEDURAL BACKGROUND

Immediately following the filing of the initial Complaint on September 24, 2021, plaintiff filed an Amended Complaint that same day.  (See ECF Nos. 1, 2).  On December 16, 2021, prior to the filing of an Answer, plaintiff filed a Second Amended Complaint.  (See ECF No. 8).  Thereafter, on February 7, 2022, defendant filed a letter requesting a pre-motion conference, seeking authorization to move to dismiss the Second Amended Complaint in its entirety.  (See ECF No. 13).  The court held a pre-motion conference on March 2, 2022, and gave plaintiff leave to file a Third Amended Complaint.  (See ECF No. 17).

Plaintiff filed the Third Amended Complaint on March 23, 2022, and defendant then requested a pre-motion conference in order to file a motion to dismiss the Third Amended Complaint in its entirety.  (See ECF Nos. 18, 20).  On April 18, 2022, the court denied the request and granted plaintiff leave to further amend.  (See Order, dated Apr. 18, 2022).  On April 21, 2022, the Fourth Amended Complaint was filed, and on June 10, 2022, the court directed defendant to file its motion to dismiss.  (See ECF No. 23; Order, dated June 10, 2022).

On July 1, 2022, defendant moved to dismiss the Fourth Amended Complaint, arguing that plaintiff fails to state a claim for race discrimination under either Title VII or Section 1981, because she alleges in conclusory fashion and without any factual support that she was treated differently than her Caucasian co-workers because of her race.  (See Def.'s Mem.[4] at 4-8; ECF No. 29).  Defendant also argues that plaintiff's claim for retaliation under N.Y. Labor Law § 215 fails because, although she claims she was terminated for making a complaint about the company's practices, she has not identified a specific violation of the Labor Law about which

_____

[4] Citations to "Def.'s Mem." refer to the Memorandum of Law in Support of Centene Management Company, LLC's Motion to Dismiss Fourth Amended Complaint, filed August 22, 2022, ECF No. 30.

she complained.  (Def.'s Mem. at 8-9).  Defendant further contends that her claim for retaliation under N.Y. Labor Law § 740 also fails because plaintiff has not alleged a violation of law, rule, or regulation that creates a substantial and specific danger to the public health and safety.  (Id. at 10-13).

On October 28, 2022, the motion to dismiss was referred to the undersigned to prepare a Report and Recommendation.  (See Order, dated Oct. 28, 2022).

DISCUSSION

I.   Dismissal Pursuant to Rule 12(b)(6)

Centene moves to dismiss plaintiff's Fourth Amended Complaint in its entirety for failing to state a plausible claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

When deciding a motion to dismiss a complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), the court should consider whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  Under this heightened pleading standard, labels, conclusions, and mere recitation of the elements of a cause of action will not suffice.  Id.; see also Bell Atl. Corp. v. Twombly, 550 U.S. at 555.  Instead, a plaintiff must provide enough factual support that, if true, would "raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. at 555.  Ultimately, when the well-pleaded facts allow no more than an inference of a "mere possibility of misconduct" and the plaintiff has only alleged, rather than shown, an entitlement to relief, the federal pleading standard of Rule 8(a)(2) has not been satisfied.  Ashcroft v. Iqbal, 556

U.S. at 679.  However, the issue is "not whether [plaintiff] will ultimately prevail" on the merits, "but whether [the] complaint [is] sufficient to cross the federal court's threshold."  <u>Skinner v. Switzer</u>, 562 U.S. 521, 529-30 (2011) (internal quotation marks and citations omitted).

The Second Circuit has stated that, in deciding a Rule 12(b)(6) motion, a court must "accept as true the factual allegations of the complaint, and draw all inferences in favor of the pleader."  <u>Mills v. Polar Molecular Corp.</u>, 12 F.3d 1170, 1174 (2d Cir. 1993); <u>see also</u> <u>Gorman v. Consolidated Edison Corp.</u>, 488 F.3d 586, 591-92 (2d Cir. 2007) (stating that when reviewing a trial court's grant of a motion to dismiss under Rule 12(b)(6), the Court "must accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party").  However, the court is not required to accept the truth of legal conclusions couched as factual allegations.  <u>See</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986).

"In determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  <u>Allen v. WestPoint-Pepperell, Inc.</u>, 945 F.2d 40, 44 (2d Cir. 1991) (citing <u>Kramer v. Time Warner Inc.</u>, 937 F.2d 767, 773 (2d Cir. 1991)); <u>see also</u> <u>Leonard v. Israel Discount Bank of New York</u>, 199 F.3d 99, 107 (2d Cir. 1999).  "Moreover, 'when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint,' the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment."  <u>International Audiotext Network, Inc. v. A.T. & T., Co.</u>, 62 F.3d 69, 72 (2d Cir. 1995) (quoting <u>Cortec Indus., Inc. v. Sum Holding L.P.</u>, 949 F.2d 42, 47 (2d Cir. 1991), <u>cert. denied</u>, 503 U.S. 960 (1992)).

II.  Race Discrimination Claims

    A.  Elements of a Race Discrimination Claim Under Title VII

        Turning first to plaintiff's Title VII claim against Centene, Title VII makes it unlawful

for an employer to discriminate against an individual based on race, color, religion, sex, or

national origin.  See 42 U.S.C. § 2000e-2(a)(1) (1994).  Claims under Title VII are governed by

the McDonnell Douglas burden shifting framework, which initially requires a plaintiff to

establish a prima facie case of discrimination.  McDonnell Douglas Corp. v. Green, 411 U.S.

792, 802 (1973).  A plaintiff establishes a prima facie case of discrimination by showing that:

"(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an

adverse employment action; and (4) the circumstances give rise to an inference of

discrimination."  Vega v. Hempstead Union Free School Dist., 801 F.3d 72, 83 (2d Cir. 2015)

(quoting Weinstock v. Columbia University, 224 F.3d 33, 42 (2d Cir. 2000)).  Once the plaintiff

establishes a prima facie case, the burden shifts to the defendant to articulate that there was a

legitimate, non-discriminatory reason for the adverse employment action.  Id.  If the defendant

meets this burden, plaintiff must then demonstrate that the proffered legitimate reason was

merely a pretext for impermissible discrimination or retaliation.  See, e.g., Ya-Chen Chen v. City

University of New York, 805 F.3d 59, 73-74 (2d Cir. 2015); Zann Kwan v. Andalez Group LLC,

737 F.3d 834, 845 (2d Cir. 2013).

        At the pleading stage, a plaintiff need only allege facts that give plausible support to the

initial phase of a Title VII litigation.  Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir.

2015).  However, "a plaintiff is not required to plead a prima facie case under McDonnell

Douglas . . . as the test was originally formulated, to defeat a motion to dismiss.  Rather, because

'a temporary presumption of discriminatory motivation' is created under the first prong of the

McDonnell Douglas analysis, a plaintiff need only give plausible support to a minimal inference

of discriminatory motivation." Vega v. Hempstead Union Free School Dist., 801 F.2d at 84

(citing Littlejohn v. City of New York, 795 F.3d at 306, 311) (internal quotation marks omitted).

Accordingly, a Title VII claim may survive a motion to dismiss so long as a plaintiff meets the

"reduced requirements" arising under McDonnell Douglas by alleging, absent direct evidence of

discrimination, that she (1) is a member of a protected class; (2) was qualified for her position;

(3) suffered an adverse employment action; and (4) "has at least minimal support for the

proposition that the employer was motivated by discriminatory intent." Littlejohn v. City of

New York, 795 F.3d at 311; see also Vega v. Hempstead Union Free School Dist., 801 F.2d at 81

(holding that the district court held plaintiff to the wrong pleading standards and "erred when it

granted Defendants' motion for judgment on the pleadings on the grounds that Vega had 'not

established a prima facie case of discrimination'").

Although plaintiff's Fourth Amended Complaint alleges that her supervisor created "an

uncomfortable work environment" for plaintiff that her Caucasian co-workers did not

experience, and that she suffered from "harassment and [a] hostile work environment" (Compl.

¶¶ 16, 17), plaintiff has represented to the court that "[n]one of Plaintiff's causes of action allege

race harassment." (See Pl.'s Feb. 14, 2022 Ltr. (opposing defendant's pre-motion conference

request to file a motion to dismiss the Second Amended Complaint, noting that she could not

"respond to Defendant's request for dismissal of a non-alleged cause of action") (ECF No. 16 at

2)).[5] As a consequence, defendant notes in its Memorandum of Law that plaintiff is not

_____

[5] In that same February 14, 2022 letter, plaintiff wrote that the Second Amended Complaint "held
three causes of action": "(1) Discrimination on basis of race in violation of 42 U.S.C. § 2000e, et seq.:
Disparate treatment, (2) Discrimination on basis of race in violation of 42 U.S.C. § 1981, and (3)
Wrongful discharge and retaliation." (ECF No. 16 at 2, citing ECF No. 8 ¶¶ 35-54). A review of the
Third Amendment Complaint (ECF No. 18) and the Fourth Amended Complaint (ECF No. 23) reveals
that the plaintiff has not added any substantive changes to the allegations in the Second Amended

advancing a race-based harassment claim and that "[t]o the extent Plaintiff's allegations of 'harassment' and 'hostile work environment' (Compl. ¶¶ 15-17) could be construed as raising such a claim, they are nonetheless insufficient." (Def's Mem. at 7 n.3 (citing <u>Littlejohn v. City of New York</u>, 795 F.3d at 321)). In her Memorandum of Law in Opposition to Defendants' Motion to Dismiss, plaintiff does not address the hostile work environment issue at all as mentioned by defendants, and therefore, the Court has not addressed the sufficiency of plaintiff's allegations insofar as they may be construed to state a hostile work environment claim. (<u>See generally</u> Pl.'s Mem.,[6] ECF No. 30-1).[7]

B. <u>Elements of A Race Discrimination Claim Under Section 1981</u>

In addition to alleging claims of race discrimination under Title VII, plaintiff also brings claims under Section 1981, which provides in pertinent part that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). In order to state a claim of race discrimination under Section 1981, plaintiff must allege facts in support of

---

Complaint that could be construed as a hostile work environment claim. Instead, when filing the Third and Fourth Amended Complaints, plaintiff dropped certain allegations from the Second Amended Complaint relating to the alleged "hostile work environment," such as that she fell behind on her assignments and work because of the hostile work environment. (ECF No. 8 ¶ 15).

[6] Citations to "Pl.'s Mem." refer to Plaintiff's Memorandum of Law In Opposition to Defendants' Motion to Dismiss Plaintiff's Fourth Amended Complaint, filed Aug. 22, 2022, ECF No. 30-1.

[7] If plaintiff was pleading a hostile work environment claim based on racial harassment as a separate cause of action under Title VII, such a claim would only survive a motion to dismiss if the complaint "plausibly allege[s] that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" <u>Maron v. Legal Aid Society</u>, No. 21 CV 5960, 2022 WL 1910247, at *8 (S.D.N.Y. June 2, 2022) (quoting <u>Littlejohn v. City of New York</u>, 795 F.3d at 320-21 (quoting <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993))). Hostile work environment claims under Title VII are evaluated by looking at all of the circumstances, which may include the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. at 23.

the following elements:  "(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts . . . )."  Mian v. Donaldson, Lufkin & Jenrette Secs. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993) (per curiam); see also DuBois v. Bedford-Flatbush Chiropractic, P.C., 409 F. Supp. 3d 62, 68 (E.D.N.Y. 2019).

Section 1981 has been interpreted to provide a basis to assert claims against private employers for wrongful termination on the basis of race, as well as for wrongful termination in retaliation for protected conduct.  See CBOCS West, Inc. v. Humphries, 553 U.S. 442, 455–57 (2008).  In analyzing claims under Section 1981, the courts apply the same standard used to evaluate a claim for discrimination and retaliation under Title VII.  See, e.g., Vivenzio v. City of Syracuse, 611 F.3d 98, 106 (2d Cir. 2010).  Like Title VII, however, when assessing claims under Section 1981 at the pleading stage, the Court does not apply the familiar McDonnell Douglas burden shifting test, which is used to analyze the evidentiary support for discrimination claims.  Cf. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002) (holding that the McDonnell Douglas framework is an evidentiary standard, not a pleading requirement).  Instead, courts generally assess the plausibility of the plaintiff's claim based on the facts alleged.  See Azkour v. Bowery Residents' Committee, Inc., 646 Fed. Appx. 40, 41 (2d Cir. 2016) (holding that the appropriate pleading standard for Section 1981 claims, in accordance with McDonnell Douglas, is for a plaintiff to "give plausible support to a minimal inference of discriminatory motivation") (quoting Vega v. Hempstead Union Free School Dist., 801 F.2d at 84).[8]

---

[8]Again, to the extent plaintiff's Complaint could be construed as pleading a hostile work environment claim, such claims are actionable under Section 1981.  Littlejohn v. City of New York, 795 F.3d at 320 (stating that "Section 1981 has been interpreted to provide a cause of action for race-based employment discrimination based on a hostile work environment") (citing Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 69 (2d Cir. 2000)) (internal quotation marks and brackets omitted); see also Sosa v. New York City Department of Education, 368 F. Supp. 3d 489, 515 (E.D.N.Y. 2019).  Courts

C. Specificity of Pleadings

At the pleading stage, a plaintiff is not required to establish a prima facie case as to every element of his claim, but the claim must be "facially plausible," Jiggetts v. N.Y.C. Dep't of Citywide Admin. Servs., No. 11 CV 1245, 2012 WL 231566, at *7 (S.D.N.Y. Jan. 6, 2012), report and recommendation adopted, 2012 WL 614310 (S.D.N.Y. Feb. 27, 2012), and there must be sufficient facts alleged in the complaint to give "plausible support" to the claims. Littlejohn v. City of New York, 795 F.3d at 311; see also EEOC v. Port Auth. of N.Y. & N.J., 768 F.3d 247, 254 (2d Cir. 2014) (holding that while a claim for discrimination "need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss . . . it must at a minimum assert nonconclusory factual matter sufficient to nudge[] [its] claims . . . across the line from conceivable to plausible to proceed") (internal quotation marks and citations omitted). Although there is no heightened pleading requirement for claims of racial animus, see Swierkiewicz v. Sorema N.A., 534 U.S. at 510–11 (rejecting a heightened pleading standard in the Title VII context), plaintiffs after Twombly must sufficiently plead that they "are [of a protected class], describe[ ] [D]efendants' actions in detail, and allege [ ] that defendants selected plaintiffs for maltreatment solely because of their [race]." Boykin v. KeyCorp., 521 F.3d 202, 215 (2d Cir. 2008) (alterations and internal quotation marks omitted).

---

apply the same standard for race based hostile work environment claims under Title VII and Section 1981. See Littlejohn v. City of New York, 795 F.3d at 320-21; Amaya v. Ballyshear LLC, 295 F. Supp. 3d 204, 223-24 (E.D.N.Y. 2018) (stating that a successful hostile work environment claim under Section 1981 "pleads conduct that (1) is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's race") (internal quotation marks and brackets omitted). Here, because plaintiff has represented that she is not raising a hostile work environment claim, the Court has not analyzed the sufficiency of her pleadings in that regard.

The "facts required by Iqbal to be alleged in the complaint need [to] . . . give plausible support to a minimal inference of discriminatory motivation."  Littlejohn v. City of New York, 795 F.3d at 311-12 (stating that an inference of discrimination could arise from circumstances such as the employer's criticism of plaintiff's performance in ethnically degrading terms or more favorable treatment of employees not in the protected group); see also C.C.M.S. v. Oxford Realty & Holdings LLC, No. 20 CV 3429, 2021 WL 2941827, at *6 (S.D.N.Y. July 12, 2021) (granting defendants' motion to dismiss and denying plaintiff's motion to amend as futile, stating that "[i]t is not enough merely to assert that the defendant took adverse action against the plaintiff, and that the action was the product of racial animus.  The complaint must allege specific facts supporting both the existence of the racial animus and the inference of a link between the adverse treatment and the racial animus") (quoting Dickerson v. State Farm Fire & Cas. Co., No. 95 CV 10733, 1996 WL 445076, at *3 (S.D.N.Y. Aug. 1, 1996)) (internal quotation marks omitted); Caldwell v. Davis Polk & Wardwell LLP, No. 19 CV 10256, 2020 WL 6274826, at *22 (S.D.N.Y. Oct. 24, 2020) (citing Dickerson language in granting defendants' motion to dismiss some of plaintiff's discrimination claims); Dove v. Fordham Univ., 56 F. Supp. 2d 330, 338-40 (S.D.N.Y. 1999) (granting defendants' motion to dismiss, holding that "[f]act-specific allegations of a causal link between the defendant's actions and the plaintiff's race are required," and "[c]onclusory or naked allegations will not suffice").

As the court in Mian v. Donaldson, Lufkin & Jenrette Secs. Corp. explained, in evaluating the sufficiency of claims of race discrimination, the Court must determine whether plaintiff has alleged facts showing that the defendant took an adverse employment action against him based on the plaintiff's race.  7 F.3d at 1087-88.  In addition, the Court must determine "whether the plaintiff has alleged racial animus with sufficient particularity."  McDowell v.

North Shore-Long Island Jewish Health System, Inc., 839 F. Supp. 2d 562, 566 (E.D.N.Y. 2012) (citing Rivera–Powell v. New York City Bd. of Elections, 470 F.3d 458, 470 (2d Cir. 2006) (affirming dismissal of plaintiff's equal protection claim, where it proffered "only a conclusory allegation of discrimination, which, without evidentiary support or allegations of particularized incidents, does not state a valid claim and so cannot withstand a motion to dismiss") (internal quotation marks omitted)); see also Lopez v. Bay Shore Union Free School Dist., 668 F. Supp. 2d 406, 414-15 (E.D.N.Y. 2009) (finding that "this Circuit continues to require that racial animus be plead with particularity" and granting defendant's motion to dismiss plaintiff's Section 1981 claims where plaintiff's "conclusory allegations" "d[id] not raise an inference of discriminatory intent").

D.    Application

In asserting claims of discrimination based on race, plaintiff alleges that she was treated "different[ly]" from her Caucasian colleagues and specifically, that her supervisor Armantrading used a different "voice, tone, words" and "attitude" in addressing plaintiff, "harassed and humiliated" her, and was "disrespectful and unpleasant" toward plaintiff. (Compl. ¶¶ 14-16).

Defendant contends that plaintiff's discrimination claims fail because she has only alleged in conclusory fashion and without factual support, that she was treated differently from her Caucasian co-workers because of her race. (Def.'s Mem. at 6). Defendant argues that courts routinely dismiss claims of discrimination where the plaintiff asserts only "different treatment" and nothing more. (Id. at 7 (citing Kalia v. City University of N.Y., No. 19 CV 6242, 2020 WL 6875173, at *5 (S.D.N.Y. Nov. 23, 2020))). Thus, defendant argues that in this case, plaintiff's claims should be dismissed because plaintiff has failed to plead any facts to show that

discriminatory intent was the motivating factor behind the treatment or that any "disparate treatment" was due to plaintiff's race.  (Id. at 7-8).

Plaintiff concedes that there were no explicit racial slurs or comments directed at her, but she argues that the level of harassment and humiliation satisfies plaintiff's "minimal burden" of alleging facts to suggest an inference of discriminatory motivation.  (Pl.'s Mem. at 6 (citing Vega v. Hempstead Union Free Sch. Dist., 801 F.3d at 84)).  As for specific instances of adverse action on the part of Armantrading, which plaintiff alleges demonstrates disparate treatment, plaintiff cites the fact that Armantrading did not provide any assistance to plaintiff during the year 2020, when her workload increased.  (Id. at 6).  She also points to the claim that Armantrading created an "uncomfortable work environment" and Armantrading's acting "as if Plaintiff taking her [paid time off] was against company policy" even though such treatment "never occurred with Caucasian co-workers."  (Id. at 2, 6-7).

Conclusory statements of discriminatory animus unsupported by factual allegations that give rise to an inference of discriminatory intent have been found insufficient to sustain a plaintiff's minimal burden.  See DeLaurencio v. Brooklyn Children's Ctr., Superintendent, 111 F. Supp. 3d 239, 250 (E.D.N.Y. 2015) (finding that plaintiff's "repeated boilerplate allegations that a [former supervisor, later coworker's] conduct was motivated by discriminatory animus is not sufficient to state a cause of action under Title VII" and dismissing plaintiff's complaint); cf. Preston v. Hilton Cent. Sch. Dist., 876 F. Supp. 2d 235, 244-45 (W.D.N.Y. 2012) (finding that "boilerplate allegations that defendant treated male same-sex sexual harassment complainants differently from female complainants" were insufficient to survive a motion to dismiss Section 1983 equal protection claims).  In Bickerstaff v. Vassar College, the court explained: "Title VII is not a 'general civility code.'" 196 F.3d 435, 452 (2d Cir. 1999) (quoting Oncale v. Sundowner

Offshore Servs., Inc., 523 U.S. 75, 80 (1998)).  Indeed, as the Second Circuit in Alfano v.

Costello noted in the context of a hostile work environment claim, "[e]veryone can be

characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh,

unjust and rude."  294 F.3d 365, 377 (2d Cir. 2002).  Thus, it is important to determine whether

personnel decisions are the result of discriminatory animus.  See also Sherman v. Yonkers Public

Schools, No. 21 CV 7317, 2023 WL 137775, at *11 (S.D.N.Y. Jan. 9, 2023) (dismissing

plaintiff's hostile work environment claim and stating that "[a]llegations of unfair treatment

directed at a member of a protected class do not establish a claim absent a basis to conclude that

unfair treatment arose because of the victim's membership in that class").

　　　　In Kitani v. New York City Transit, the court dismissed a gender discrimination claim

where the plaintiff alleged that her male counterparts were paid more, and that she was denied

training, equipment and promotions that were offered to the men, finding that these allegations

were not sufficient to demonstrate discriminatory intent.  No. 19 CV 1043, 2022 WL 874781, at

*7 (S.D.N.Y. Mar. 24, 2022).  In DeLaurencio v. Brooklyn Children's Center, the plaintiff's

allegations that her former supervisor, later coworker, "pushed her, left boxes in front of her

filing cabinet, threw keys at her, called her 'stupid,' taunted her for failing a civil service exam

and for taking an empty basket and left-over food home, posted facially-neutral newspaper

cartoons on a public bulletin board, broke her ceramic angels, failed to record that she had taken

a sick day, and left a cockroach on her desk and a chicken bone on her filing cabinet," among

other things, led the court to conclude that the individual "harbored personal enmity toward

[plaintiff]."  111 F. Supp. 3d at 249.  The court concluded that plaintiff's "repeated boilerplate

allegations" that the conduct was motivated by discriminatory animus based on plaintiff's

identity as a Black West Indian woman was not sufficient to state a cause of action under Title

16

VII, "since her conclusory statements [were] not supported by *factual* allegations."  Id. at 250 (stating that "[t]he facts do not suggest that Inganamort's facially-neutral, albeit rude, conduct was motivated by discriminatory animus").

Similarly, courts have dismissed Section 1981 claims where the factual allegations fail to demonstrate any discriminatory animus.  See, e.g., McDowell v. North Shore-Long Island Jewish Health Sys., Inc., 788 F. Supp. 2d at 81; see also Grimes v. Fremont Gen'l Corp., 785 F. Supp. 2d 269, 296-97 (S.D.N.Y. 2011) (collecting cases).  In Cheruvu v. Healthnow New York, Inc., No. 20 CV 808, 2022 WL 3346918, at *6 (W.D.N.Y. Aug. 12, 2022), the court dismissed a Section 1981 discrimination claim brought by a doctor who was terminated after challenging certain billing practices.  The court found that the plaintiff had failed to articulate facts that the defendant's decision to terminate him was motivated by his race, thereby failing to allege facts that give rise to a plausible inference of discrimination.[9]  (Id.)

Similarly, in McDowell v. North Shore–Long Island Jewish Health System Inc., 788 F. Supp. 2d at 81-82, the court found that plaintiff had not alleged any facts showing discriminatory animus and that the only allegations were (1) certain alleged racist remarks made by the plaintiff's co-worker and (2) the conclusory allegation that the defendant treated similarly situated non-Black individuals better than it treated the plaintiff.  The court noted that the plaintiff's conclusion that other similarly situated employees were treated more favorably than him "is a bare conclusion, unsupported by any specific alleged facts."  Id. at 82.  Moreover, even considering plaintiff's allegations of racist comments by his coworkers, the court in McDowell found that where there were no facts alleged to attribute the comments to the plaintiff's

---

[9] On September 12, 2022, the plaintiff in Cheruvu filed a Notice of Appeal in this case, appealing the district court's decision granting in part defendants' motions to dismiss and dismissing plaintiff's federal claims with prejudice.  (Dkt. 20 CV 808, ECF No. 44).  The appeal is still pending.  (See Cheruvu v. Healthnow New York Inc., No. 22 CV 1993 (2d Cir. 2022)).

managers, the complaint failed to state an actionable claim.  Id.  The McDowell court dismissed the plaintiff's claims without prejudice to his right to serve an amended complaint, and after plaintiff filed a second amended complaint, the defendant again filed a motion to dismiss. McDowell v. North Shore–Long Island Jewish Health System Inc., 839 F.Supp.2d 562, 563 (E.DN.Y. Mar. 13, 2012).  In the Second Amended Complaint, the plaintiff alleged "more specific facts," including allegations that there was a lack of diversity among plaintiff's co-workers and that defendant hired a non-Black employee following plaintiff's discharge.  Id. at 569, 571.  The court concluded that the alleged racist remark, when examined within a broader context as presented by the added facts, "allow[ed] the[e] [c]ourt to find that the [p]laintiff ha[d] asserted a plausible claim that the [d]efendant terminated him based upon his race," and as a result, the court denied the defendant's motion to dismiss.  Id.

Here, plaintiff has been given several opportunities, more than in McDowell, to amend her complaint and yet the Fourth Amended Complaint still fails to allege facts – other than conclusory allegations that she was treated differently due to her race – that would allow a connection between her alleged disparate treatment and her race.  Plaintiff does not even cite a single stray racist comment that would suggest racial animus; plaintiff in fact concedes that her supervisor did not use any racial slurs or make any racially motivated comments against her. (Compl. ¶ 16).

Moreover, as defendant notes, although plaintiff alleges discrimination, she fails to identify any facts that suggest she was subjected to the treatment she alleges *because* of her race. She broadly compares herself to her Caucasian colleagues, but she fails to address whether or not anyone else was separated from Centene nor does she identify the race of anyone else who may have been terminated.  Apart from alleging that the supervisor used a different "voice, tone,

18

words, and attitude" when speaking to plaintiff, plaintiff fails to identify how often and under what circumstances these interactions occurred nor does she allege that she suffered any work-related consequences during these interactions. See Kalia v. City University of New York, 2020 WL 6875173, at * 7 (dismissing plaintiff's Title VII claim, finding that his allegations that he was "'subjected to routine denigration and spiteful looks,'" "do not clear the plausibility bar" that the treatment was due to his race or national origin even when he also claimed that he was "'stripped of his duties,'" precluded from certain committees and from teaching graduate classes, denied a salary supplement and had his bid for distinguished professorship delayed) (internal brackets omitted); see also Daniels v. City of New York, No. 17 CV 9960, 2019 WL 251511, at *4 (S.D.N.Y. Jan. 17, 2019) (dismissing a claim of racial discrimination due to plaintiff's failure to describe the circumstances surrounding his and his comparators' work histories or the events leading up to their alleged differing punishments).

Although plaintiff here alleges that she "was treated differently than individuals not in her protected class" (Compl. ¶ 38), she fails to provide any specific examples of mistreatment or even different treatment based on race. Unlike the plaintiffs in a number of the cases cited above, she does not allege that she was given different job assignments, provided with different resources, denied a promotion, or even paid less than her co-workers. Nor does she provide any factual basis to evaluate how the manager treated her co-workers differently except through her tone and attitude. She does allege that her workload increased, but, according to the pleadings, everyone's workload increased, suggesting that plaintiff's need to work overtime was not based on her race. Moreover, although she claims that Armantrading failed to provide her assistance in connection with the increase in workload, notably absent from the Complaint is any indication as

to what assistance she is referring to, nor is there even a claim that others were provided such assistance.[10]

Although plaintiff's burden at the pleading stage is minimal, she still must allege some factual basis upon which the court could draw the minimal inference of discriminatory motivation.  Unlike some of the cases cited above, which were dismissed due to insufficient pleadings, but where there were allegations of racist remarks, see, e.g., McDowell v. North Shore–Long Island Jewish Health System Inc., 788 F. Supp. 2d at 81-82, or claims that comparators were paid more, and given training, equipment and promotions not offered to the plaintiff, see, e.g., Kitani v. New York City Transit, 2022 WL 874781, at *7, plaintiff's Complaint here is devoid of even these minimal types of allegations.  Given that these courts dismissed complaints with more specificity than is alleged here, it is respectfully recommended that the Title VII and Section 1981 claims be dismissed as failing to state a plausible claim of race discrimination.

## III.  Retaliation

Plaintiff also raises a claim of wrongful discharge and retaliation under New York's Whistleblower laws:  New York Labor Law ("NYLL") §§ 215(1) and 740(2).  She alleges in her Complaint that in October 2020, Centene changed its internal policies to require individualized

---

[10] In addition, although plaintiff does not raise it in the Argument section of her Memorandum of Law, her claim that she was required to attend a meeting on a day when the company announced a no-meeting day, might also be construed as an example of disparate treatment of plaintiff as compared to her co-workers.  (Compl. ¶ 20).  However, while the Complaint alleges that no other employee was required to attend a meeting that day, neither plaintiff's Memorandum of Law nor the Complaint cites any factual basis for inferring that the supervisor's required meeting with plaintiff was motivated by plaintiff's race.  For example, if plaintiff were the only person of Asian descent among her co-workers, perhaps the fact that she was the only one called in might raise an inference of disparate treatment.  However, plaintiff does not allege that she was the only person of Asian descent among her co-workers.  Nor does the Complaint allege any information about the subjects addressed at the meeting that might shed some light on the supervisor's possible motivations for the meeting.

assessments of enrollees to be conducted by phone, rather than in person. (Compl. ¶¶ 24-26). Plaintiff alleges that she expressed concerns to her team manager about not making such assessments based on personal interviews and her concerns as to accuracy and safety. (Id. ¶ 27). She further alleges that once Centene began their reduction in service hours, many of the enrollees began complaining and she alleges that the reduction in hours "posed a great risk to their health and safety." (Id. ¶ 28). Given her concerns, plaintiff reported the "company's wrongful practice" to the New York State Department of Health ("NY DOH"). (Id. ¶ 30). As a result, the NY DOH conducted an investigation and ultimately instructed defendant to give enrollees back the service hours. (Id. ¶¶ 31-32). Plaintiff claims that after complaining,[11] she was terminated on March 4, 2021. (Id. ¶¶ 33-35).

   A. NYLL § 215

      Section 215(1) of the New York Labor Law prohibits an employer from discharging, penalizing, or discriminating against an employee who complains about a violation of the Labor Law. N.Y. Lab. Law § 215(1)(a). To establish a claim of retaliation under Section 215, the plaintiff must allege "(1) participation in protected activity known to the defendant . . . ; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." Thompson v. Jennings & Hartwell Fuel Oil Corp., No. 14 CV 1857, 2015 WL 5437492, *4 (E.D.N.Y. Aug. 27, 2015) (quoting Mullins v. City of New York, 626 F.3d 47, 53 (2d Cir. 2010)), report and recommendation adopted, 2015 WL 5444939 (E.D.N.Y. Sept. 15, 2015).

_____

[11] Plaintiff does not specify when between October 2020, when Centene changed its internal policies, and March 4, 2021, when she was terminated, she filed a complaint with the NY DOH.

Additionally, under Section 215, courts have required the employee to complain about conduct that is a violation of the Labor Law in order to pursue a claim of retaliation. [12]  See N.Y. Lab. Law § 215(1)(a); Biberaj v. Pritchard Indus., Inc., No. 08 CV 7993, 2009 WL 10738222, at *12 (S.D.N.Y. Sept. 28, 2009) (finding plaintiff's retaliation claims under Section 215 deficient because the alleged violations of collective bargaining agreements were not Labor Law violations); see also Daniels v. American Airlines Inc., No. 19 CV 3110, 2022 WL 493573, at *6 (E.D.N.Y. Feb. 17, 2022) (dismissing a claim brought under Section 215, finding that the employee's complaint of workplace bullying did not rise to the level of a Labor Law violation); Hallett v. Stuart Dean Co., 481 F. Supp. 3d 294, 311-12 (S.D.N.Y. 2020) (finding that because long-term incentive compensation did not constitute "wages" for purposes of the NYLL, the lack of such payment was not a Labor Law violation sufficient to sustain a Section 215 claim).

Moreover, while an employee seeking to bring a claim under Section 215 is not required to plead that she complained to her employer about a specific statutory section of the Labor Law, the complaint must allege facts demonstrating that "her complaint to the employer [was] . . . of a colorable violation of the statute."  Kassman v. KPMG LLP, 925 F. Supp. 2d 453, 473 (S.D.N.Y. 2013) (finding that "none of" plaintiffs' complaints to their employer, as alleged in the pleadings, "rises to the level of specificity required to state a retaliation claim under . . . the New York Labor Law, as there is no indication that any Plaintiffs were actually complaining of . . . [New York State Equal Pay Act] violations") (internal quotation marks omitted); see also Patel v.

---

[12] During a March 2, 2022 conference with the district court, plaintiff's counsel conceded that the Second Amended Complaint did not allege facts showing that plaintiff believed defendant was violating the Labor Law for purposes of the Section 215 claim, but that plaintiff would be willing to amend the complaint to fix that error.  (See ECF No. 19, Mar. 2, 2022 Tr. 8:15-9:2).  The Court granted plaintiff leave to amend and, given plaintiff's prior amendments, warned plaintiff to include everything that the Court should be considering.  (Id. Tr. 16:3-12).  The Fourth Amended Complaint, filed thereafter, still fails to contain allegations that defendant was violating the Labor Law.

<u>Baluchi's Indian Rest.</u>, No. 08 CV 9985, 2009 WL 2358620, at *11 (S.D.N.Y. July 30, 2009) (granting plaintiffs' motion to file a second amended complaint to add a Section 215 claim, finding that plaintiffs had adequately stated such a claim where they allege that they complained to employer of "substandard and unsafe working conditions, low wages, and lack of benefits"); <u>Nicholls v. Brookdale University Hosp. Medical Center</u>, No. 03 CV 6233, 2004 WL 1533831, at *5 (E.D.N.Y. July 9, 2004) (dismissing plaintiff's Section 215 claim because "plaintiff has not pleaded with a level of specificity sufficient to support a cause of action," and the court "cannot determine what alleged violation of New York's Labor Law triggered plaintiff's claim" under Section 215); <u>cf.</u> <u>Williams v. Preeminent Protective Servs., Inc.</u>, No. 14 CV 5333, 2017 WL 1592556, at *6 (E.D.N.Y. Apr. 28, 2017) (stating that to establish a prima facie claim for retaliation, "[t]he employee's complaint need not cite a specific provision of the N.Y.L.L. alleged to be violated, but the employee must reasonably believe that the employer is violating the Labor Law, and must have stated a complaint . . . about conduct that violates the Labor Law" (internal quotation marks omitted)).

Plaintiff contends that defendant's conduct in changing the policy for assessing clients' service requirements and the reduction in services violated 18 NYCRR §§ 505.14(b)(5)(v)(C)(2)(i) through (vi) and 18 NYCRR §§ 505.28(h)(5)(ii)(a) through (f), and that her termination for complaining about these policies constituted retaliation in violation of Section 215. (Pl.'s Mem. at 9-10). Defendant argues that while plaintiff cites the New York Codes, Rules and Regulations governing charges for professional health services, she has not alleged a violation of the Labor Law and therefore, has failed to state a claim under Section 215. (Def.'s Reply[13] at 4-5).

---

[13] Citations to "Def.'s Reply" refer to defendant's Reply Memorandum in support of its Motion to Dismiss Plaintiff's Fourth Amended Complaint, filed on August 22, 2022, ECF No. 31.

Although plaintiff alleges that defendant's conduct was in violation of two NYCRR sections dealing with the provision of health services, these provisions are not a part of the Labor Law. Section 215(1) specifically prohibits retaliation for complaints made by an employee about an employer's violations of "this chapter, or any order issued by the commissioner." N.Y. Lab. Law § 215(1)(a). The "chapter" referred to in Section 215 is Chapter 31 of the Consolidated Laws of New York (a/k/a the New York Labor Law), which is designed to protect the rights of New York State workers. Additionally, the "commissioner," as referenced in Section 215, refers to the "commissioner of labor of the state of New York." N.Y. Lab. Law § 2(2).

By contrast, the two NYCRR sections cited by plaintiff are regulations for medical care, which are not within the Labor Law and which have a completely different purpose – namely, to protect the recipients of medical care and not the workers responsible for providing such care. Similarly, neither of the two NYCRR sections are regulations promulgated by the Commissioner of Labor such that they would fall within the purview of Section 215.[14]

Even construing plaintiff's allegations in the light most favorable to plaintiff, she has not alleged that defendant's conduct was in violation of the New York Labor Law. As the court in Copantitla v. Fiskardo Estiatorio Inc., explained, in order for a plaintiff to state a claim for retaliation under NYLL § 215, a plaintiff must allege that "while employed by the defendant, she made a complaint about the employer's violation of [NYLL] and, as a result, was terminated or

---

[14] While there are NYCRR sections promulgated by the Commissioner of Labor, these sections fall within Title 12 of the NYCRR, and include various wage orders, see 12 NYCRR § 142 (Minimum Wage Order for Miscellaneous Industries and Occupations), and 12 NYCRR § 146 (Hospitality Industry Wage Order); see generally New York State Department of Labor, *Wage Orders*, https://dol.ny.gov/wage-orders, whereas the sections cited by plaintiff, which fall within Title 18 of the NYCRR, are regulations promulgated by the Department of Social Services. Cf. Eschmann v. White Plains Crane Service, Inc., No. 11 CV 5881, 2014 WL 1224247, at *12 (E.D.N.Y. Mar. 24, 2014) (finding that, prior to Section 215's amendment broadening the scope to include Commissioner of Labor orders relating to wages, Section 215 did not cover complaints about overtime wages because overtime wages were not protected by the NYLL itself but only by commissioner orders as codified in the NYCRR).

otherwise penalized, discriminated against, or subjected to an adverse employment action." 788 F. Supp. 2d 253, 302 (S.D.N.Y. 2011); see also Murray v. United Parcels Service, Inc., No. 20 CV 1427, 2022 WL 4468295, at *19-20 (E.D.N.Y. Sept. 25, 2022) (holding that because plaintiffs' Section 215 claim was based on an allegation that they "raised concerns" about DOT violations and not of any provision of the NYLL, they failed to state a claim for retaliation under Section 215); HC2, Inc. v. Delaney, 510 F. Supp. 3d 86, 100 (S.D.N.Y. 2020) (dismissing a Section 215 counterclaim where the counterclaim plaintiff did not "allege that [he] made a complaint about a violation of the New York Labor Laws or an order of the Commissioner of Labor"); Kassman v. KPMG LLP, 925 F. Supp. 2d at 472 (dismissing a claim under Section 215, holding that "under the New York Labor Law, Plaintiffs must show that they complained about a specific violation of the Labor Law" and finding that the alleged complaints did not "ris[e] to the level of specificity required to state a retaliation claim under . . . the New York Labor Law") (internal quotation marks omitted); Robledo v. Number 9 Parfume Leasehold, No. 12 CV 3579, 2013 WL 1718917, at *7 (S.D.N.Y. 2013) (stating that "to establish a claim under Section 215(1)(a), a plaintiff must show that she complained to her employer about its violations of the Labor Law and that she was terminated because of her complaints") (internal quotation marks and alterations omitted)).

Here, because plaintiff has not alleged any conduct on the part of defendants that could reasonably be construed to violate the Labor Law, and has only alleged conduct that she believes violated NYCRR sections not within the Labor Law, her Section 215 claim fails to state a plausible claim.

Accordingly, since plaintiff has failed to allege that her termination occurred after she reported a violation of the Labor Law, it is respectfully recommended that plaintiff's Section 215 claims be dismissed for failing to state a viable claim.

B. NYLL § 740

1. Amended Section 740 and its Retroactive Application

At the time of the events alleged in the Complaint[15] – between 2020 and March 4, 2021 – Section 740 of the NYLL prohibited an employer from taking retaliatory action against an employee who "discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety, or which constitutes health care fraud."  N.Y. Lab. Law § 740(2)(a).  Prior to its recent amendment, Section 740 specifically defined "law, rule or regulation" to include "any duly enacted statute or ordinance or any rule or regulation promulgated pursuant to any federal, state or local statute or ordinance."  N.Y. Lab. Law § 740(1)(c).  Under that version of Section 740 that was in effect at the time of the incidents alleged in the Complaint, the statute required that "at the pleading stage, a plaintiff must (1) specify that an actual violation occurred, and (2) describe how the defendant's activities endangered the health and safety of the public."  HC2, Inc. v. Delaney, 510 F. Supp. 3d at 95-96 (internal brackets and quotations marks omitted).

Courts construing that earlier version of Section 740 have held that "an employee's good faith, reasonable belief that a violation occurred is insufficient."  Calabro v. Nassau Univ. Med. Ctr., 424 F. Supp. 2d 465, 475 (E.D.N.Y. 2006); see also Webb-Weber v. Community Action for Hum. Servs., Inc., 23 N.Y.3d 448, 452-53, 15 N.E.3d 1172, 1174, 992 N.Y.S.2d 163, 165

---

[15] The provision was amended effective January 26, 2022.  (See discussion infra at 27).

(2014).  Additionally, under the version of the statute in effect at the time of the incidents, if the complaint failed to identify the "substantial and specific danger" to public health arising from a violation of an established law, rule or regulation, the claim was subject to dismissal.  Rinaldi v. NICE, Ltd., No. 19 CV 424, 2021 WL 4295263, at *3 (S.D.N.Y. Sept. 21, 2021).

Section 740 was amended, signed into law in October 2021, and became effective January 26, 2022, to now prohibit retaliation against an employee who "discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee *reasonably believes* is in violation of law, rule or regulation or that the employee *reasonably believes poses* a substantial and specific danger to the public health or safety" ("2021 amendments").  N.Y. Lab. Law § 740(2)(a) (2021) (emphasis added).  Section 740 no longer requires that an actual violation have occurred or that the violation actually created or presented a substantial and specific danger to the public health or safety, or constituted health care fraud; the plaintiff's reasonable belief that a violation had occurred or that the alleged violation would be a substantial and specific danger is now sufficient.  Moreover, Section 740(1)(c) now defines a "law, rule or regulation" to include "(i) any duly enacted federal, state or local statute or ordinance or executive order; (ii) any rule or regulation promulgated pursuant to such statute or ordinance or executive order; or (iii) any judicial or administrative decision, ruling or order." N.Y. Lab. Law § 740(1)(c) (2021).

The parties do not address the applicability of these amendments in their motion papers, and there are few cases that have examined whistleblower claims under Section 740 since the amendment became effective in January 2022.  See, e.g., Rinaldi v. Mills, No. 21 CV 2630, 2022 WL 17480081, at *2 (2d Cir. 2022) (applying the pre-amendment version of Section 740, and affirming grant of defendant's motion to dismiss plaintiff's Section 740 claim, pursuant to Rule

12(c), holding that plaintiff had "failed to plead that the company's practices violated any law, rule, or regulation or that the violation 'poses a substantial and specific danger to the public health or safety'");[16] Walsh v. Community Health Center of Richmond, No. 21 CV 3094, 2022 WL 4539264, at *2 (E.D.N.Y. Sept. 28, 2022) (mentioning briefly in *dicta* that "[t]he parties agree that a Section 740 claim requires the plaintiff to demonstrate that she reported an actual violation of the law" but not addressing the amended language);[17] Murray v. United Parcels Service Inc, 2022 WL 4468295, at *19-20 (deciding defendants' motion to dismiss plaintiff's Section 740 claim and applying the pre-amendment Section 740 language but not addressing the amended language); Vasquez v. Parker, No. 22 CV 1225, 2022 WL 1558120, at *2 n.4 (S.D.N.Y. May 17, 2022) (mentioning Section 740 briefly in a footnote, but citing the pre-amendment Section 740 language with no mention of the 2021 amendments or the "reasonably believes" language); Arazi v. Cohen Brothers Realty Corporation, No. 20 CV 8837, 2022 WL 912940, at *10-13 (S.D.N.Y. Mar. 28, 2022) (denying defendant's motion to dismiss plaintiff's Section 740 claim, finding that plaintiff had sufficiently pleaded, pursuant to the pre-amended version of Section 740 and without any mention of the amended language, that defendant engaged in a practice that violated a law, rule or regulation that created a substantial and specific danger to the public health or safety).

---

[16] The Second Circuit cited language from the amended version of Section 740 when it held that the plaintiff failed to plead that the violation "*poses* a substantial and specific danger." (emphasis added). Nevertheless, the Second Circuit applied the pre-amendment version.  The Second Circuit did not address the issue of retroactive application of the amendment but applied the earlier version of Section 740, presumably because the district court's decision granting judgment on the pleadings was issued in 2021, prior to the amendment.

[17] In Walsh, the court was asked to consider whether claim preclusion barred the Secretary of Labor from seeking money damages for an employee who had alleged a violation of Section 740 in a prior lawsuit.  Since the Court in Walsh was not directly considering a pending 740 claim, there was no need to address the issue of the amendment.

Even fewer cases have addressed whether the 2021 amendments should be applied

retroactively.  In <u>Zennamo v. County of Oneida</u>, the court applied the earlier version of the

statute that was in effect at the time of the incidents alleged in the plaintiff's complaint.  No. 21

CV 840, 2022 WL 4328346, at *9-10 (N.D.N.Y. Sept. 19, 2022).  Without explaining its

reasoning in detail, the court noted in a footnote that had the amended version of Section 740

been in effect in 2020 when the plaintiff's allegations arose, he likely would have stated a claim.

<u>Id.</u> n.2.

On the other hand, one New York State trial court has suggested that the current version

of Section 740 should be applied retroactively.  <u>See</u> <u>Williams v. Arc of Rensselaer County</u>, 77

Misc.3d 212, 213-14, 175 N.Y.S.3d 458, 459 (Sup. Ct. Rensselaer Cnty. 2022).  The <u>Williams</u>

court was addressing a different part of Section 740 than is at issue here.  There, the defendant

sought to strike the plaintiff's demand for a jury trial, arguing that Section 740's provision

expressly providing for a jury trial in Section 740 actions was not enacted until after plaintiff

commenced the action.  <u>Id.</u>, 77 Misc.3d at 213, 175 N.Y.S.3d at 458.  Prior to the 2021

amendments, a plaintiff bringing a NYLL Section 740 action had no right to a jury trial and was

limited to certain equitable relief; defendant argued that the 2021 amendments should not apply

retroactively.  <u>Id.</u>, 77 Misc.3d at 213, 175 N.Y.S.3d at 459.

Although the <u>Williams</u> court ultimately did not find for the plaintiff for other reasons,[18]

the court concluded that it was not persuaded by defendant's argument that Section 740 would

not apply retroactively.  Citing to the Sponsors' Memorandum for the amendments to Section

740, the court concluded that the 2021 amendments to NYLL 740 were "remedial" and

---

[18] Ultimately, the <u>Williams</u> court granted defendant's motion to strike the plaintiff's jury demand
because plaintiff had only sought equitable relief and had not moved to amend her complaint to assert any
additional claims that would trigger the right to a jury trial.  <u>Williams v. Arc of Rensselaer County</u>, 77
Misc.3d at 214, 175 N.Y.S.3d at 459.

"intended to correct what the legislature viewed as deficiencies in the prior law."  Id., 77 Misc.3d at 214, 175 N.Y.S.3d at 459.

   "Under New York law, statutory amendments are generally 'presumed to have prospective application unless the Legislature's preference for retroactivity is explicitly stated or clearly indicated.'"  Palin v. New York Times Company, 510 F. Supp. 3d 21, 26 (S.D.N.Y. 2020) (citing Matter of Gleason (Michael Vee, Ltd.), 96 N.Y.2d 117, 122, 726 N.Y.S.2d 45, 47, 749 N.E.2d 724, 726 (2001)).   "[R]emedial statutes" are statutes "designed to correct imperfections in prior law, by generally giving relief to the aggrieved party."  Palin v. New York Times Company, 510 F. Supp. 3d at 26 (internal quotation marks omitted).  A remedial statute "should be given retroactive effect in order to effectuate its beneficial purpose."  Id. (internal quotation marks omitted).

   However, "the mere classification of a statute as remedial does not automatically overcome the strong presumption that statutes should be applied prospectively," and thus "courts must look at legislative history to see if it reveals that the purpose of new legislation is to clarify what the law was always meant to say and do."  CFCU Community Credit Union v. Hayward, 552 F.3d 253, 262 (2d Cir. 2009) (citing Majewski v. Broadalbin-Perth Central School District, 91 N.Y.2d 577, 584, 673 N.Y.S.2d 966, 966, 696 N.E.2d 978, 978 (1998)) (internal quotation marks omitted).  Other factors to consider in determining whether a statute should have retroactive effect are whether the legislature has "made a specific pronouncement about retroactive effect or conveyed a sense of urgency," whether the statute "was designed to rewrite an unintended judicial interpretation," and "whether the enactment itself reaffirms a legislative judgment about what the law in question should be."  Palin v. New York Times Company, 510

F. Supp. 3d at 26-27 (citing Matter of Gleason (Michael Vee, Ltd.), 96 N.Y.2d at 122, 726

N.Y.S.2d at 47, 749 N.E.2d at 726).

 The decision in Palin v. New York Times Company is instructive.  There, the court was

asked to consider whether an amendment to the anti-SLAPP provisions of New York Civil

Rights Law Section 76-a, requiring public figures to prove actual malice by clear and convincing

evidence, should be given retroactive effect.  As part of its analysis, the court examined the

legislative history behind the amendment, including the sponsor memorandum, and concluded

that the amendments to the provision had a "remedial" purpose intended to correct the narrow

scope of the statute's prior iteration.  510 F. Supp. 3d at 27; see also CFCU Community Credit

Union v. Hayward, 552 F.3d at 263 (noting that in New York, "while not determinative, a

legislator's sponsor memo submitted contemporaneously with the legislation is entitled to

considerable weight in discerning legislative intent" (internal quotation marks omitted)).  In

considering the sponsor memorandum, the Palin court noted that the sponsor memorandum

specifically stated that the prior law had been "strictly limited" to certain cases and that the

amendments would "better advance the purposes that the Legislature originally identified in

enacting New York's anti-SLAPP law."  510 F. Supp. 3d at 27.  This legislative history, in

addition to the fact that the legislature had conveyed a sense of urgency by directing that the

amendment was to "take effect immediately," persuaded the Palin court that Section 76-a, as a

remedial statute, should be given retroactive effect.  Id.

 In the instant case, as the Williams court noted, a review of the Senate Bill sponsor

memorandum issued in connection with 2021 amendments to Section 740 reveals that the

sponsors were seeking to expand the protection afforded to private employees by Section 740,

noting that the Section "ha[d] long been restrictive."  N.Y. Spons. Memo., 2021 S.B. S4394A

(where State Senator Jessica Ramos, the Senate sponsor of the amendments, stated:  the prior

version of Section 740 "has long been restrictive"),

https://www.nysenate.gov/legislation/bills/2021/s4394/amendment/a.[19]  The Sponsor

Memorandum explains that under the prior version of the statute, "courts have held that for

private employees, Labor Law 740 requires proof of an actual violation of law in order to sustain

a cause of action."  Id.  It would not protect "an employee reporting any myriad of illegal

activities that do not directly affect public health or safety, from sexual harassment to tax

evasion" from their employer's retaliation.  These restrictions created a discrepancy between

Section 740 and its public employee counterpart, New York's Civil Service Law 75-b, which

since 1986, has protected disclosure of "improper governmental actions," or actions in violation

of any federal, state, local law, rule, or regulation, where there is a reasonable belief of such

action.  Id.  The amendment to Section 740 "corrects the above discrepancies."  Id.

        In determining whether retroactive application of an amendment is appropriate, the Court

must also consider whether it would offend due process, or have a harsh impact if applied

retroactively.  Palin v. New York Times Company, 510 F. Supp. 3d at 28.  Retroactive

application does not offend due process where, "as here, [defendant] will face no 'harsh impacts'

from retroactive application."  Coleman v. Grand, 523 F. Supp. 3d 244, 259 (ED.N.Y. 2021)

(citing Palin v. New York Times Company, 510 F. Supp. 3d at 28-29).

        In this case, the Sponsor Memorandum makes it clear that the amendments to Section

740 were designed to address the "restrictive" nature of the requirements that an employee

demonstrate that an actual violation occurred, and that the defendant's actions actually

endangered the health and safety of the public.  Instead, by modifying the statute to only require

---

[19] The Court notes that the citation is to the sponsor memorandum for Senate Bill S4394A, the amended, active version of the bill that was signed into law.

a plaintiff to show a "reasonable belief" that a violation had occurred or that the alleged violation would create a substantial and specific danger to the public, the legislature was expanding the protections offered to employees consistent with the original intent of the statute, which was to provide protection from retaliation for employees who reported their employer's violations. Thus, this Court agrees with the <u>Williams</u> court that the amendments were "remedial" and should be applied to the claims in this case.

Moreover, there is no due process violation in this case because the amended Section 740 does not create new rights or remedies where none previously existed. Cf. <u>S.J. v. Choice Hotels International, Inc.</u>, 473 F. Supp. 3d 147, 156-57 (E.D.N.Y. 2020) (declining to retroactively apply New York Social Services Law Section 483-bb(c), which established a civil right of action for victims of human trafficking). Indeed, as explained further below, regardless of which version of the statute is applied, plaintiff's Section 740 claim fails to state a plausible claim sufficient to survive a motion to dismiss.

Having considered the legislative history and the remedial purpose of the amendment, the Court is persuaded that plaintiff's claims should be analyzed for purposes of this motion to dismiss under the more lenient requirements of the amended Section 740, which requires only that plaintiff have a reasonable belief that the employer has violated a law, rule or regulation that plaintiff reasonably believes poses a substantial and specific danger to the public health or safety.

2. <u>Violation of Law, Rule or Regulation</u>

Similar to its argument regarding plaintiff's Section 215 claim, defendant argues that plaintiff has not alleged a violation of an actual law, rule, or regulation sufficient to sustain her Section 740 claim. (Def.'s Mem. at 10). Plaintiff responds that courts have held that there is no requirement that the plaintiff identify a specific law, rule or regulation. (See Pl.'s Mem. at 11

(citing Webb-Weber v. Community Action for Human Servs., Inc., 23 N.Y.3d at 451, 15 N.E.3d at 1173, 992 N.Y.S.2d at 164)).  According to plaintiff, all that plaintiff needs to do is report or threaten to report the "employer's 'activity, policy or practice.'"  Id.

To the extent defendant argues that plaintiff has failed to identify a particular law, rule or regulation that has been violated, or that plaintiff reasonably believed was violated, the New York Court of Appeals struck down that requirement in 2014.  See Webb-Weber v. Community Action for Hum. Servs., Inc., 23 N.Y.3d at 453, 15 N.E.3d at 1174, 992 N.Y.S.2d at 165 (holding that "for pleading purposes, the complaint need not specify the actual law, rule or regulation violated" and striking interpretations of Appellate Division authority that would require otherwise); see also Arazi v. Cohen Brothers Realty Corporation, 2022 WL 912940, at *11.

However, plaintiff must do more than report or threaten to report the "employer's 'activity, policy or practice'" that plaintiff reasonably believed was in violation of some law, rule or regulation.  (Pl.'s Mem. at 11).  The complaint "must identify the particular activities, policies or practices in which the employer allegedly engaged."  Webb-Weber v. Comty. Action for Hum. Servs., Inc., 23 N.Y.3d at 453-54, 15 N.E.3d at 1174-75, 992 N.Y.S.2d at 165-66 (holding plaintiff sufficiently alleged violations of various laws, rules or regulations where plaintiff had complained about inadequate fire safety, the falsification of medication and treatment records, and deficiencies in a facility).

Even affording plaintiff's allegations every favorable inference, the Court concludes that plaintiff has not identified such particular activities or practices that she reasonably believed would violate a law, rule or regulation, a violation of which she reasonably believed posed a substantial and specific danger to the public health or safety.

3. <u>MLTC Policy 16.06</u>

Plaintiff alleges that she is entitled to recovery under Section 740 for defendant's

violation of MLTC Policy 16.06, which is a policy statement, issued by the New York State

Department of Health (NY DOH) Office of Health Insurance Programs, that provides guidance

on NY DOH regulations pertaining to notices proposing to reduce or discontinue personal care

services or consumer directed personal assistance services.  (<u>See</u> ECF No. 23, Ex. B).

Specifically, MLTC Policy 16.06, which is described as a "directive," states that its **purpose** "**is**

**to provide further guidance to MLTC plans concerning appropriate reasons and notice language**

**to be used when proposing to reduce or discontinue PCS or CDPAS.**"  (<u>Id.</u>)  Noting that plans

may not reduce or discontinue an enrollee's personal care/assistance services unless there is a

legitimate reason for doing so, such as one of the reasons set forth in 18 NYCRR §§

505.14(b)(5)(v)(c)(2)(i) through (vi) and 18 NYCRR §§ 505.28(h)(5)(ii)(a) through (f), this

directive details certain information that must be included in the notices provided to enrollees

before their services can be changed.  (<u>Id.</u>)  It does not provide procedures for conducting

reviews nor does it indicate what an appropriate reason or reasons would be for a reduction or

discontinuance; it is in essence a notice provision, providing guidance as to what should be

included in the notices sent to the enrollees.[20]

As an initial matter in evaluating plaintiff's claim under Section 740, MLTC Policy 16.06

simply provides guidance, and is not a duly enacted statute or ordinance, nor is it a binding rule

or regulation promulgated by statute or ordinance.  Nor, pursuant to the amended definition of

"law, rule or regulation," is the Policy a regulation promulgated by executive order or a judicial

---

[20] Indeed, the guidance states that the purpose of the requirements being explained in the policy "is to assure that the plan's notice accurately advises the enrollee . . . *what* the plan is proposing to change with regard to the enrollee's PCS or CDPAS and *why* the plan is proposing to make that change."  (<u>See</u> ECF No. 23, Ex. B at 1).

or administrative decision, ruling or order.  See N.Y. Lab. Law § 740(1)(c) (2021).  As one district court in this circuit has held, "guidance[s] . . . are not laws, rules, or regulations the violation of which can give rise to a New York whistleblower claim."  HC2. Inc. v. Delaney, 510 F. Supp. 3d at 97-98.  The HC2. Inc. court specifically concluded that, pursuant to principles of administrative law, guidances promulgated by New York City and the federal Centers for Disease Control and Prevention lack the force of law to be predicates for a Section 740 claim.[21] 510 F. Supp. 3d at 98-99.

Moreover, even if the MLTC Policy was considered a law, rule or regulation as defined by Section 740, plaintiff has failed to plead that she reasonably believed defendant violated the Policy, let alone that defendant actually violated the Policy or that any actions taken by defendant violated the Policy.  Plaintiff alleges that she complained about defendant's change in the review process from in-person interviews as had been done in the past to reviews of enrollees' needs conducted by telephone.  (Compl. ¶¶ 25-26).  Plaintiff expressed concern that telephonic interviews would not be adequate to assess the enrollees' needs.  (Id. ¶ 27).  However, the Policy does not specify how a determination of individualized need is to be made, nor does it require in person reviews.

Plaintiff further alleges that defendant's motivation for requiring plaintiff to conduct case reviews for enrollees on an "across-the-board" basis was for the alleged reason that defendant

---

[21] The HC2. Inc. court explained that under both local and federal law, substantive rules that carry the force of law are adopted in accordance with the rulemaking requirements pursuant to their respective administrative procedure acts.  510 F. Supp. 3d at 98.  Thus, the court reasoned that because neither guidance was promulgated pursuant to the relevant administrative procedure act, they lacked the force of law.  Id.  The MLTC policy here is New York State guidance.  Nevertheless, the Court finds that the HC2. Inc. court's reasoning similarly applies here.  See New York State Administrative Procedure Act § 102(2)(b)(iv) (excluding from its definition of a "Rule" any "forms and instructions, interpretive statements and statements of general policy which in themselves have no legal effect but are merely explanatory").

"can make more profit."  (Compl. ¶¶ 24-25).  Although MLTC Policy 16.06 acknowledges that the plan must consider the facts of the individual enrollee's circumstances and cannot reduce services as part of an "across-the board" action that fails to consider individual enrollees' particular circumstances, plaintiff does not allege that defendant instituted an across-the-board reduction in services without considering the individual enrollees' particular circumstances. Rather, the fact that defendant's employees were asked to conduct individualized reviews supports the opposite conclusion that defendant was taking the enrollees' particular circumstances into account before reducing or discontinuing services.

Moreover, since MLTC Policy 16.06 actually deals with the content of the notices to be sent to enrollees, nothing in the Complaint suggests that the defendant failed, or that plaintiff reasonably believed defendant failed, to send out the proper notices to enrollees whose services were being reduced or that the notices were deficient in any way.  Thus, even if MLTC Policy 16.06 was more than just a directive and in fact considered a law, rule or regulation, plaintiff's failure to include allegations in the Complaint relating to complaints about deficiencies in the notices renders plaintiff's claim under Section 740 insufficient to survive a motion to dismiss. Even under the amended version of Section 740, plaintiff's pleading is deficient because she has not alleged facts that would show her reasonable belief that MLTC Policy 16.06's notice requirements had been violated by defendant's actions.

4.  NYCRR Sections

To the extent plaintiff relies on alleged violations of 18 NYCRR §§ 505.14(b)(5)(v)(c)(2)(i) through (vi) and 18 NYCRR §§ 505.28(h)(5)(ii)(a) through (f) as the basis for her Section 740 claim, these two sections are "regulations" as defined by Section 740. However, a review of the Complaint indicates that plaintiff has not alleged actual violations of

these two provisions.  Nor has she alleged that she reasonably believed defendant's actions to be in violation of those two provisions.  The two NYCRR sections require managed long-term care plans to conduct individualized assessments before reducing or discontinuing services and to notify the individuals about the changes and why.  (Def.'s Reply at 7).  Again, all that is alleged in the Complaint is that Centene initiated remote reviews and then reduced services "so [Centene] can make more profit."  (Compl. ¶ 24).  Plaintiff does not allege that enrollees were not subjected to individualized assessments nor does she allege that the enrollees were not notified of the changes in services; indeed, the Complaint notes that many of the enrollees complained about the reduction in services.  (Id. ¶ 28).  Thus, by plaintiff's own admission, she could not have reasonably believed (1) that assessments were not being conducted or (2) that the enrollees did not receive notice of the reductions.  Furthermore, as noted with respect to the allegations relating to the alleged violation of the MLTC Policy, the use of telephonic interviews is not prohibited by the NYCRR provisions.

The Court finds similarly unavailing plaintiff's argument that NY DOH's investigation of plaintiff's complaint and the order requiring defendant to give back the service hours "demonstrates that defendant's violations were actual."  (Pl.'s Mem. at 12; see Compl. ¶¶ 31-32).  Plaintiff cites to the decision in Webb-Weber v. Community. Action for Hum. Servs., Inc., as support for her argument, but that case is distinguishable.  In Webb-Weber, the plaintiff's complaints about inadequate fire safety, falsification of medication and treatment records, and deficiencies in the facility, resulted in sanctions by the NYS DOH and the issuance of three violations by the NYC Fire Department.  23 N.Y.3d at 453, 992 N.Y.S.2d at 165-66, 15 N.E.3d at 1174-75.  The Webb-Weber court concluded that although the plaintiff had not specifically alleged violations of particular laws, rules, or regulations, "[t]he substantive allegations in the

complaint, particularly those that assert that sanctions and violations were issued by public bodies, allegedly as a result of plaintiff's complaints, sufficiently support plaintiff's allegation that defendants violated various laws, rules or regulations." Id.

Here, plaintiff merely claims that NY DOH instructed defendant to give back service hours. (Compl. ¶ 31). There is no claim that DOH made any findings that defendant violated any law, rule or regulations, nor that the DOH issued sanctions or notices of violations. The Court recognizes that defendant's actions may have prompted NY DOH to instruct that some changes be made, resulting in plaintiff believing that there had been some violation of some regulation.

Nevertheless, for all the reasons previously stated, and even when construing all reasonable inferences in plaintiff's favor, plaintiff has not alleged conduct on the part of defendant that she reasonably believed violated the NYCRR regulations upon which her retaliation claim relies. Thus, under either the newly amended version of Section 740 or the pre-amendment version, the Court finds that the Complaint fails to adequately allege a plausible claim that defendant's conduct was a violation of, or that plaintiff reasonably believed was a violation of, the NYCRR provisions and policy that she relies on for her Section 740 claim.

5. Substantial and Specific Danger to the Public Health or Safety

Finally, even if plaintiff's Complaint is construed to satisfy the requirement of alleging a violation, or a reasonable belief of a violation, of an existing law, rule or regulation, the Complaint fails to allege what specific danger to public health or safety resulted or was reasonably believed by plaintiff to result from defendants' conduct, and therefore, the Section 740 claims fails for this reason as well. (Def.'s Reply at 6); see Coyle v. College of Westchester, Inc., 166 A.D.3d 722, 724, 87 N.Y.S.3d 242, 244 (2d Dep't 2018) (affirming the trial court's

dismissal of plaintiff's Section 740 claim and holding that although the amended complaint sufficiently alleged a violation of law, rule or regulation, it failed to allege any substantial and specific danger to the public health or safety resulting from such violation).

Plaintiff only alleges that telephonic interviews or the reductions in service would pose "a health and safety risk to . . . enrollees and the public." (Compl. ¶ 24). However, plaintiff has failed to allege how either telephonic interviews or a reduction in services would create a specific harm to public health or public safety, or would constitute healthcare fraud as defined by the prior version of the statute.[22]

While the decrease of services may have affected certain individual enrollees, this is not the type of "traditional 'public health and safety' concern'" that courts have "consistently held" the statute addresses. Arazi v. Coehn Brothers Realty Corporation, 2022 WL 912940, at *13 (quoting Villarin v. Rabbi Haskel Lookstein Sch., 96 A.D.3d 1, 5, 942 N.Y.S.2d 67, 70 (1st Dep't 2012)); cf. Barker v. Peconic Landing at Southold, Inc., 885 F. Supp. 2d 564, 571 (E.D.N.Y. 2012) (finding that allegations of drug use and theft by nurses employed by defendant were sufficient to state a claim that plaintiff reported conduct which presented a substantial threat to public health or safety). Section 740 "clearly envisions a certain quantum of dangerous activity before its remedies are implicated." Peace v. KRNH, 12 A.D.3d 914, 915, 785 N.Y.S.2d 547, 549 (3rd Dep't 2004).

Plaintiff alleges that members "felt the result" of the reductions by pointing to a decrease in one enrollee's hours from 42 to 14, an enrollee falling and sustaining injuries during a decreased hour time, and over 400 enrollees being dropped. (Compl. ¶ 29). However, the decrease in hours or cessation of services, alone, fails to demonstrate how the public's, or the

---

[22] Prior to its amendment, Section 740 defined health care fraud as health care fraud defined by article one hundred seventy-seven (177) of the New York penal law. N.Y. Lab. Law § 740(g) (2019).

enrollees,' health and safety have been harmed, or how plaintiff reasonably believed their health and safety have been harmed, as plaintiff has not alleged that the enrollees needed these hours and services or that the reductions were not justified for other reasons.  Additionally, although unfortunate, the one incident of the enrollee falling is insufficient for a claim that plaintiff reasonably believed defendant's actions posed a *substantial* threat to public health and safety.

Thus, the Court respectfully recommends that plaintiff's claims for retaliation under Section 740 be dismissed.

<u>CONCLUSION</u>

Accordingly, the Court respectfully recommends that plaintiff's Fourth Amended Complaint be dismissed in its entirety.  Given that plaintiff has already filed four amended complaints and still has failed to satisfy the pleading requirements of <u>Iqbal</u> and <u>Twombly</u>, the Court also recommends that plaintiff not be given leave to amend for a fifth time.[23]

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); <u>see also</u> Fed. R. Civ. P. 6(a) (providing the method for computing time).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  <u>See, e.g.</u>, <u>Caidor v. Onondaga Cty.</u>, 517 F.3d 601, 604 (2d Cir. 2008).

---

[23] The Court notes that although plaintiff has not sought leave again to amend the Complaint, defendant argues that plaintiff should not be given leave to amend, as doing so would be futile, given plaintiff's numerous opportunities to remedy known pleading deficiencies.  (Def.'s Reply at 8-9).  "It is the usual practice upon granting a motion to dismiss to allow leave to replead."  <u>Cortec Indus., Inc. v. Sum Holding L.P.</u>, 949 F.2d 42, 48 (2d Cir. 1991).  However, "[a] plaintiff need not be given leave to amend if it fails to specify . . . how amendment would cure the pleading deficiencies in its complaint."  <u>TechnoMarine SA v. Giftports, Inc.</u>, 758 F.3d 493, 505 (2d Cir. 2014).  Here, better pleading would not cure plaintiff's complaint, as the problems are substantive.  Even after at least four opportunities, plaintiff cannot allege any facts showing that her race was a motivating factor of her termination.  Furthermore, neither the MLTC Policy nor the two cited NYCRR sections are part of the NYLL or a law, rule, or regulation to be predicates for Section 215 and 740 claims, respectively.  Thus, another attempt to amend the complaint would be futile.

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: February 2, 2023
          Brooklyn, New York

                                        /s/ Cheryl L. Pollak
                                        CHERYL L. POLLAK
                                        Chief United States Magistrate Judge
                                        Eastern District of New York